**J & K COMPUTER SYSTEMS, INC.,
Plaintiff and Respondent,**

v.

**Douglas T. PARRISH, A. Chris Chlarson
and Dynamic Software Corporation,
Defendants and Appellants.**

**No. 17016.**

Supreme Court of Utah.

Feb. 24, 1982.

Edward M. Garrett, Salt Lake City, for defendants and appellants.

George J. Romney, Richard M. Hymas, Salt Lake City, for plaintiff and respondent.

HOWE, Justice:

Plaintiff, J & K Computer Systems, Inc., brought this action seeking to recover damages from and enjoin its former employees, Douglas T. Parrish and A. Chris Chlarson, and a corporation formed by them, Dynamic Software Corporation, from using or disclosing certain of plaintiff's confidential computer programs. Parrish counterclaimed for the recovery of $3,000 which he had paid to J & K pursuant to an anti-competitive covenant in an agreement between the parties. The trial court found for the plaintiff, awarded it $7,500 damages and enjoined the defendants and all persons associated with them from further use of the computer programs. Parrish's counterclaim was dismissed. Defendants appeal.

J & K was originally formed as a partnership by John Robertson and Keith Blake in 1976 to develop, market and install computer software. In March 1978, they hired Parrish as a computer programmer. In August of that same year the partners incorporated their business and required Parrish to sign an employment contract as a condition of continuing his employment. The

terms of that contract with which we are here concerned are as follows:

*Disclosure of Information*: The Employee recognizes and acknowledges that a list of the Employer's customers, as it may exist from time to time, and the methods and programs used in conducting the Employer's business are valuable, special and unique assets of the Employer's business. The Employee will not, during or after the term of employment, disclose methods or programs used in conducting the Employer's business or any part thereof to any person, firm, corporation, association, or other entity for any reason or purpose whatever....

In the event of a breach or threatened breach by the Employee of this Section 10, the Employer shall be entitled to an injunction restraining the Employee from disclosing, in whole or part a list of the Employer's customers, from disclosing methods or programs used in conducting the Employer's business and/or from rendering any services to any person, firm, corporation, association, or other entity to whom such list, methods or programs in whole or in part, have been disclosed, or are threatened to be disclosed, and/or an injunction restraining the Employee from violating the provisions of subsection 10(a) above. Nothing herein shall be construed as prohibiting the Employer from pursing (sic) any other remedies available to the Employer for such breach or threatened breach, including the recovery of damages from the Employee.

In the months that followed, Parrish developed an open-item/balance forward accounts receivable program which would be usable on the IBM System 34. After the program was developed, it was installed by Parrish at the Arnold Machinery Company in Salt Lake City. E. A. Miller and Sons Meat Packing Company was also contacted by Parrish on behalf of J & K about the possibility of it installing the accounts receivable program.

In May 1979, Parrish's brother-in-law, Chlarson, was hired as a trainee by J & K and was assigned to work under his direction. Chlarson also entered into an employment agreement similar to the contract between Parrish and J & K prohibiting the disclosure of J & K's computer programs. Two months later, in May 1979, Parrish voluntarily left the employ of J & K and entered into an agreement with Arnold Machinery Company whereby Parrish would provide Arnold Machinery with programming services. Parrish also contracted with E. A. Miller for the installation of an accounts receivable program.

In June 1979, Chlarson voluntarily left J & K and began working with Parrish. Later that month, they formed Dynamic Software Corporation with Parrish as president and Chlarson as secretary-treasurer. The record shows that in July 1979, Parrish made an electronic copy of the accounts receivable program which J & K had installed at Arnold Machinery Company. This copy was made on a magnetic disk which Parrish then gave to Chlarson so that Chlarson could become familiar with it. Chlarson took the disk to the IBM 34 Computer workroom in the IBM building in Salt Lake City, and there began to work with the programs contained thereon. While Chlarson was working with the disk, an employee of J & K saw one of its programs displayed on the screen of the computer terminal. The employee then advised his employer who thereafter, upon advice of legal counsel, went back to the computer room at IBM. Plaintiff retrieved from the garbage can two printouts of the programs which had been displayed and discarded by Chlarson. Those programs were similar to the J & K accounts receivable program and serve as the basis for this lawsuit.

Defendants assail the judgment of the trial court awarding the plaintiffs damages and injunctive relief claiming that the accounts receivable programs were not confidential or trade secrets. There is no dispute that the plaintiff regarded the programs which it developed and used in its business as proprietary. The employment contracts which Parrish and Chlarson signed specified that the computer programs were "valuable, special and unique

assets" of plaintiff's business. An expert witness, Leonard Nicholas, called by the defendants, gave testimony which supports the finding that the programs are trade secrets. He stated that it would be very unlikely that two computer programmers would be capable of drafting an accounts receivable program with as many similarities as are contained in the plaintiff's and defendants' programs. Both Nicholas and an expert witness called by the plaintiff, Larry Johnson, agreed that the computer programs of the plaintiff and defendants are similar. Johnson testified that the programs had such "great similarity and likeness to the point where the programs are a copy, one of the other." Johnson further testified that J & K's accounts receivable program was unique and could not be found in any text or source book. Parrish confirmed in his testimony that although any two accounts receivable programs may have a similar end result and some similar logic, the line for line program would be written differently.

A trade secret includes any formula, patent, device, plan or compilation of information which is used in one's business and which gives him an opportunity to obtain an advantage over competitors who do not know it. See Restatement of the Law of Torts, Section 757, comment b (1939).

 It is a well recognized principle that our law will afford protection to the inventor of a special process or trade secret. *Microbiological Research Corp. v. Muna*, Utah, 625 P.2d 690 (1981); 42 Am.Jur.2d, Injunctions, Section 75. With the evidence recited above before it, the trial court could have reasonably determined that J & K's accounts receivable program was secret and worthy of protection by the law. Defendants assert that the accounts receivable program was revealed to certain customers and therefore not protectable. The record, however, shows that the plaintiff endeavored to keep its accounts receivable program secret. Plaintiff's employees and customers were informed of the secret nature of the program. The program was marked with the following legend: "Program Prod-

ucts Proprietary To-J & K Computer Systems, Inc., Salt Lake City, Utah. Authorized Use By License Agreement Only." That a few of the plaintiff's customers had access to the program does not prevent the program from being classified as a trade secret where the plaintiff was attempting to keep the secret and the program is still unavailable to the computer trade as a whole. See, e.g., *Grace v. Orkin Exterminating Co.*, Tex.Civ.App., 255 S.W.2d 279 (1953).

 Defendants next contend that it is unlawful to enjoin them from using their skills, training and experience which they have gained in the computer programming business. In support of this proposition, they rely on the case of *Hallmark Personnel of Texas, Inc. v. Franks*, Texas, 562 S.W.2d 933 (1978), where it is stated:

> Matters of general knowledge in an industry cannot be appropriated by one as a trade secret.... The efficiency and skills which an employee develops through his work belong to him and not to his former employer...

562 S.W.2d at 936.

That case and similar authorities cited by the defendants, including the recent decision of this Court in *Microbiological Research Corp. v. Muna*, supra, are not supportive of defendants' position that they have been wrongfully enjoined from using their acquired skills. In *Muna*, supra, we stated:

> Upon termination of his employment, an employee has the prerogative to use his general knowledge, experience, memory and skill, however gained, provided he does not use, disclose, or impinge upon any of the secret processes or business secrets of his former employer.

625 P.2d at 697.

Defendants were not enjoined by the order of the trial court from using their general knowledge, skills, memory or experience. They were, however, enjoined from using the proprietary accounts receivable program which the plaintiff had developed.

Defendants argue that there is no basis in the evidence to support the trial court's award of $7,500 to the plaintiff as fair and equitable damages. The evidence, however, shows that the plaintiff incurred costs of over $28,500 in developing the accounts receivable program and lost the Arnold Machinery Company as a customer because of the defendants' misappropriation of its program. Furthermore, there was evidence that the plaintiff may have also lost E. A. Miller as a customer. Parrish, while an employee of plaintiff, had been sent to Miller. Parrish reported that Miller was not interested in purchasing an accounts receivable program. But shortly after Parrish left the employ of the plaintiff, he acquired Miller as a customer. The evidence indicates that the plaintiff received approximately $2,500 for installing and authorizing the use of its accounts receivable program. Thus considering plaintiff's loss of customers and the cost of developing its accounts receivable program, $7,500 does not appear to be an unreasonable assessment of damages. Where there is any competent evidence to support the findings of the trial court, such findings, and conclusions rationally based thereon will not be disturbed.

Defendants further argue that the anticompetitive covenant in the employment contract which they signed is unenforceable. It provides:

(10) *Competition.*

(a) *Work for Competitors, or in Competition with Employer.* Upon the termination of employment after 90 days from the date hereof and within one (1) calendar year from date of termination, whether by termination of this Agreement or otherwise, the Employee agrees that before commencing employment with a competing company, a current customer, or on his or her own account in competition with the Employer, Employee shall first pay to the Employer the amount of $1,000.00 plus $1,000.00 for each calendar year or part thereof (not to exceed $3,000.00) the Employee was employed by the Employer. Said amount is the sum agreed between the parties here-

to which represents the value of the training and information given to the Employee by the Employer. There shall be no set-offs or counterclaims against said sum; said sum being the agreed net amount due to the Employer under this paragraph.

Parrish asserts that this covenant is too broad and thus should be held unenforceable. We only need here to decide, and we do decide, that the covenant was enforceable as it related to "a current customer" of the plaintiff. Parrish clearly became liable for the payment of the $3,000.00 when he installed the program he had developed at Arnold Machinery Company, a current customer of plaintiff. We refrain from discussing other aspects of the covenant since payment of the $3,000.00 freed Parrish to work and compete without any further restriction. Parrish was liable for the full $3,000.00 since he worked for the plaintiff corporation part of two calendar years, 1978 and 1979.

Finally, defendants argue that federal copyright law pre-empts our state law. Since this point was neither raised in the pleadings nor put into issue at trial, we refrain from considering it for the first time on appeal. *Gardner, Inc. v. Pappas*, 24 Utah 2d 264, 470 P.2d 252 (1970).

The judgment below is affirmed.

HALL, C. J., STEWART and OAKS, JJ., and CROCKETT, Retired Justice, concur.

CROCKETT, Retired Justice, sat in lieu of MAUGHAN, J.