998 F.2d 1550
 26 Fed.R.Serv.3d 457, 30 U.S.P.Q.2d 1032
 Paul M. JENSEN, individually and dba PMJ Enterprises, and
Perimeter Properties, Inc., a Utah Corporation,
Plaintiffs-Appellants,
v.
REDEVELOPMENT AGENCY OF SANDY CITY, a political subdivision
of the State of Utah, Sandy City, a municipal corporation,
J. Steven Newton, as an individual and as a corporate
officer, Woodbury Corporation, a Utah corporation, Vestwood,
a Utah general partnership and DOES 1 to 25, Defendants-Appellees.
 No. 92-4084.
 United States Court of Appeals,
Tenth Circuit.
 July 15, 1993.
 
 Robert H. Copier, Salt Lake City, Utah, for plaintiffs-appellants.
 Jody K. Burnett (Kurt M. Frankenburg with her on the brief), of Williams & Hunt, and Glen W. Roberts, Salt Lake City, Utah, for defendants-appellees.
 Before KELLY and SETH, Circuit Judges, and ALLEY, District Judge.*
 ALLEY, District Judge.
 This is an appeal by plaintiffs-appellants Paul M. Jensen, PMJ Enterprises and Perimeter Properties, Inc. (hereinafter collectively referred to as "plaintiffs") from the award of summary judgment and order of dismissal of the United States District Court for the District of Utah, Central Division, in favor of defendants-appellees Redevelopment Agency of Sandy City ("RDA"), Sandy City, J. Steven Newton, Woodbury Corporation, and Vestwood. Our jurisdiction arises under 28 U.S.C. § 1291. We affirm.
 
 I.
 BACKGROUND
 
 1
 This action arises out of plaintiffs' attempt to finance, broker and develop an auto mall[1] in Sandy City, Utah. Plaintiffs allege that from 1986 until 1988, they disclosed "intellectual property, trade secrets, and proprietary information" relating to the auto mall to Sandy City, the RDA, and J. Steven Newton, mayor of Sandy City (hereinafter collectively referred to as "the City"), after being assured that the information would be kept confidential. The information delivered to the City included detailed site plans showing the location and development of the project in particular phases, including information regarding street access, land acquisition, construction costs, development schedules and design concepts. Plaintiffs also supplied a variety of financial statements and pro forma evaluations that demonstrated the viability of the auto mall complex, such as the income, sales and other tax and economic benefits that would be received by the City. Plaintiffs maintain that the primary reason for confidentiality was to allow them an opportunity to complete the land assembly phase of the auto mall before disclosure to other real estate developers who might have proceeded to buy up the land at the auto mall site.
 
 
 2
 Plaintiffs allege that the City unlawfully disclosed the information concerning the proposed auto mall to Woodbury Corporation and Vestwood, real estate developers, who then proceeded to develop the auto mall using plans that are substantially similar to the plans of plaintiffs. Plaintiffs further contend that the City stigmatized plaintiffs by falsely attributing to them a scheme to make money quickly by taking advantage of the City.
 
 
 3
 Plaintiffs filed an action in the district court asserting a violation of 42 U.S.C. § 1983 and numerous pendent state law claims.[2] Their initial complaint was filed on August 1, 1990, and an amended complaint was filed on September 7, 1990. On January 29, 1991, the district court entered a scheduling order setting May 31, 1991, as the deadline for discovery. On April 18, 1991, plaintiffs filed a second amended complaint, and the district court entered an amended scheduling order on June 17, 1991, requiring the completion of all discovery by December 31, 1991.
 
 
 4
 On January 15, 1992, two weeks after the discovery cutoff date, all defendants filed motions for summary judgment, arguing, inter alia, that the district court did not have jurisdiction because plaintiffs' claims did not raise a federal question. In response, plaintiffs filed an affidavit pursuant to Rule 56(f) of the Federal Rules of Civil Procedure stating that they could not oppose the motions for summary judgment as they had not yet taken the deposition of Woodbury Corporation corporate officer Wallace Woodbury because he had been on vacation in the Caribbean, and, because the deposition of Mayor Newton was only recently transcribed and had not yet been signed.
 
 
 5
 Woodbury Corporation and Vestwood filed a reply memorandum in support of their motion for summary judgment and in response to the Rule 56(f) affidavit on March 3, 1992. Sandy City and the RDA also filed a memorandum in response to the Rule 56(f) affidavit on March 3, 1992. Thereafter, plaintiffs, without leave of court, filed an interim memorandum in response to the pending summary judgment motions, to which Sandy City and the RDA filed a motion to strike.
 
 
 6
 Following a hearing on defendants' motions for summary judgment on April 2, 1992, the district court ruled that there were no genuine issues as to any material facts with respect to plaintiffs' federal claims and that each of the defendants was entitled to judgment on those claims as a matter of law. The district court then denied plaintiffs' request for relief under Rule 56(f), dismissed their federal claims under 42 U.S.C. § 1983 with prejudice upon the merits, and dismissed all remaining pendent state law claims without prejudice for lack of subject matter jurisdiction. This appeal followed.
 
 
 7
 On appeal, plaintiffs contend that the district court erred in: (1) granting defendants' motions for summary judgment without honoring plaintiffs' Rule 56(f) affidavit and allowing them an opportunity to conduct additional discovery; and, (2) granting summary judgment in favor of defendants because the information relating to the auto mall constituted federally protected property interests that gave rise to federal question jurisdiction. Thus, this appeal presents two issues--one procedural, and one substantive.
 
 II.
 RULE 56(f)
 
 8
 The first issue presented by this appeal is whether the district court erred in denying plaintiffs' request for relief under Rule 56(f).[3] We review a district court's denial of a Rule 56(f) motion for an abuse of discretion. Committee for the First Amendment v. Campbell, 962 F.2d 1517, 1522 (10th Cir.1992); Patty Precision v. Brown & Sharpe Mfg. Co., 742 F.2d 1260, 1264 (10th Cir.1984).
 
 
 9
 Plaintiffs argue that the district court erred in granting defendants' motions for summary judgment without honoring their Rule 56(f) affidavit and interim memorandum in opposition to those motions because they were unable to oppose the summary judgment motions without further discovery. Specifically, plaintiffs contend that they could not respond to the summary judgment motions because they had not yet taken the deposition of Mr. Woodbury, whose testimony would have gone to the core of the factual issues concerning the alleged unauthorized disclosures made to Woodbury Corporation and Vestwood. In further support of their contention, plaintiffs state that they timely noticed the deposition of Mr. Woodbury but that the deposition was continued until April 1992 by agreement of the parties due to the unavailability of Mr. Woodbury who was in the Caribbean. They also argue that by local rule,[4] counsel are required to cooperate and work together in scheduling discovery and that a motion to compel would have been inappropriate in their atmosphere of cooperation. They thus claim that the district court should have rewarded and encouraged the cooperation between counsel by deferring any decision on the motions until after discovery was completed.
 
 
 10
 When a party files an affidavit under Rule 56(f) for additional discovery time, the party invokes the trial court's discretion. Patty Precision, 742 F.2d at 1264. The trial court may deny the affiant's request for additional time, deny the motion for summary judgment, order a continuance for additional discovery or make "such other order as is just."[5] Fed.R.Civ.P. 56(f). " 'Unless dilatory or lacking in merit, the motion should be liberally treated.' " Campbell, 962 F.2d at 1522 (quoting James W. Moore & Jeremy C. Wicker, Moore's Federal Practice p 56.24 (1988)). See also Patty Precision, 742 F.2d at 1264.
 
 
 11
 To invoke the protection of Rule 56(f), the party filing the affidavit must state with specificity how "the desired time would enable [the nonmoving party] to meet its burden in opposing summary judgment." Pasternak v. Lear Petroleum Exploration, Inc., 790 F.2d 828, 833 (10th Cir.1986); see also Guthrie v. Sawyer, 970 F.2d 733, 738 (10th Cir.1992); Weir v. Anaconda Co., 773 F.2d 1073, 1081-83 (10th Cir.1985). "Rule 56(f) may not be invoked by the mere assertion that discovery is incomplete or that specific facts necessary to oppose summary judgment are unavailable...." Pasternak, 790 F.2d at 833. Moreover, merely asserting " 'that the evidence supporting a [party's] allegation is in the hands of the [opposing party] is insufficient to justify a denial of a motion for summary judgment under Rule 56(f).' " Weir, 773 F.2d at 1083 (quoting Patty Precision, 742 F.2d at 1264). "Rather, the party filing the affidavit must show how additional time will enable him to rebut [the] movant's allegations of no genuine issue of fact." Patty Precision, 742 F.2d at 1264. Furthermore, if the party filing the Rule 56(f) affidavit has been dilatory, or the information sought is either irrelevant to the summary judgment motion or merely cumulative, no extension will be granted. Id. at 1264-65.
 
 
 12
 In this case, the district court did not abuse its discretion in denying plaintiffs' request for additional time for discovery, as plaintiffs' Rule 56(f) affidavit was deficient in two ways. First, plaintiffs' affidavit merely states in conclusory terms that they were unable to obtain the deposition of Mr. Woodbury, and that they could have conducted further discovery if given more time.[6] Our cases have established that this kind of conclusory affidavit is insufficient. See, e.g., id.; Campbell, 962 F.2d at 1522-23. Plaintiffs failed to identify any facts that they believed would be discovered in the deposition of Mr. Woodbury. There was not even an attempt to show how such facts, if discovered, would have been useful in opposing the motions for summary judgment. Plaintiffs made no showing that additional discovery time would have established facts sufficient to create a genuine issue of fact.
 
 
 13
 Second, the record reflects that plaintiffs were dilatory in pursuing discovery prior to the filing of their Rule 56(f) affidavit.[7] Plaintiffs filed their initial complaint on August 1, 1990, and their first amended complaint on September 7, 1990. The discovery deadline was first established as May 31, 1991. Plaintiffs' second amended complaint was filed on April 18, 1991, and the amended deadline for discovery was established as December 31, 1991. Other than the deposition of Mayor Newton on December 30, 1991, the only discovery conducted by plaintiffs after the initial filing of their complaint was conducted through written interrogatories, requests for admissions and request for production of documents. Plaintiffs chose not to depose any of defendants' key witnesses during any of the blocks of time designated for that purpose. They also failed to make arrangements to inspect the files of Woodbury Corporation that counsel had agreed to make available for inspection. Plaintiffs have had an opportunity to make full discovery; they simply chose not to do so.
 
 
 14
 In view of the foregoing, we find no error in the district court's denial of plaintiffs' Rule 56(f) affidavit.
 
 III.
 GRANT OF SUMMARY JUDGMENT
 
 15
 The second issue presented by this appeal is whether the district court erred in granting defendants' motions for summary judgment on their merits. We review a summary judgment decision de novo, utilizing the same legal standards as the district court in evaluating the motion. Applied Genetics Int'l, Inc. v. First Affiliated Sec., Inc., 912 F.2d 1238, 1241 (10th Cir.1990). Summary judgment is appropriate if "there is no genuine issue as to any material fact and ... the moving party is entitled to a judgment as a matter of law." Fed.R.Civ.P. 56(c). We view the evidence and draw any inferences in a light most favorable to the party opposing summary judgment, but the party must identify sufficient evidence that would require submission of the case to a jury. Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 248, 106 S.Ct. 2505, 2510, 91 L.Ed.2d 202 (1986). It is not enough that the nonmovant's evidence be "merely colorable" or anything short of "significantly probative." Id. at 249-50, 106 S.Ct. at 2510-11. At a minimum, a movant must point to those portions of the record that demonstrate an absence of a genuine issue of a material fact given the relevant substantive law. Celotex Corp. v. Catrett, 477 U.S. 317, 322-23, 106 S.Ct. 2548, 2552, 91 L.Ed.2d 265 (1986). If a movant establishes entitlement to judgment as a matter of law given uncontroverted, operative facts contained in the documentary evidence, summary judgment will lie. Anderson, 477 U.S. at 251, 106 S.Ct. at 2511.
 
 
 16
 Plaintiffs contend that the district court erred in granting summary judgment because their claims give rise to a federal question under 42 U.S.C. § 1983. Specifically, plaintiffs' second amended complaint[8] alleges a due process violation due to defendants' purported failure to "give reasonable notice and a meaningful opportunity to be heard to plaintiffs prior to and after infringing upon, damaging[,] taking, using, wrongfully appropriating, or depriving them of their property interests in the Utah Automall and their liberty interests in their reputations." Second Am.Compl. p 44. Thus, plaintiffs' second amended complaint alleges deprivation of their property interests and liberty interests without due process of law.
 
 
 17
 "Before a successful claim can be brought under 42 U.S.C. § 1983, a plaintiff must demonstrate that he has been deprived of a federal right, and that the right's deprivation was under color of state law." Gunkel v. City of Emporia, Kan., 835 F.2d 1302, 1303 (10th Cir.1987); see also Jacobs, Visconsi & Jacobs, Co. v. City of Lawrence, Kan., 927 F.2d 1111, 1115 (10th Cir.1991). The parties do not dispute that the City's actions were taken under color of state law. Therefore, to be successful with their claim, plaintiffs must show a deprivation of a federal right. Accordingly, we now address, in turn, the propriety of plaintiffs' claims regarding deprivation of their property interests and liberty interests without due process of law.
 
 A.
 PROPERTY INTEREST
 
 18
 In order to claim that they have been deprived of a property interest without due process of law, plaintiffs must first prove that they had a property interest. To have a property interest, plaintiffs "clearly must have more than an abstract need or desire for it. [They] must have more than a unilateral expectation of it. [They] must, instead, have a legitimate claim of entitlement to it." Board of Regents v. Roth, 408 U.S. 564, 577, 92 S.Ct. 2701, 2709, 33 L.Ed.2d 548 (1972). Whether or not a property interest exists is to be determined under Utah law. Id.
 
 
 19
 The property interest claimed by plaintiffs on this appeal is "intellectual property, trade secrets, and proprietary information" relating to the auto mall, including the name, site, design and project details ranging from layout to financing sources. In support of their contention that a federal question is raised here, plaintiffs argue that "a trade secret that can be the object of a theft of property under Utah state law can [also] be the object of a governmental deprivation of property without due process of law that is actionable under federal law." Appellants' Reply Br. at 1.
 
 
 20
 We initially note that although plaintiffs interchangeably term their purported property right "intellectual property, trade secrets, and proprietary information," the question presented before the Court concerns "trade secrets," which encompass all of the rights claimed by plaintiffs. While we agree that under Utah law, trade secrets can constitute property rights, Microbiological Research Corp. v. Muna, 625 P.2d 690, 696 (Utah 1981);[9] see also J & K Computer Sys., Inc. v. Parrish, 642 P.2d 732, 735 (Utah 1982), we find that plaintiffs' claim does not rise to a constitutional level because given the undisputed evidence, and construing the facts in a light most favorable to plaintiffs, we cannot find that any trade secrets existed in this case.
 
 
 21
 As stated, it is a well recognized principle that Utah law will afford protection to the inventor of a trade secret. Muna, 625 P.2d at 696. However, the "threshold issue in every case is whether, in fact, there is a trade secret to be misappropriated. The secret is of value only so long as it remains a secret. The burden is upon the plaintiff[s] to prove its existence as a secret, and there is no presumption in [their] favor."[10] Id. (footnote omitted). Further, "[t]he subject matter of the trade secret must be unknown; it should not be in the public domain nor within the knowledge of the trade...." Id. (quoting 2 Callman, Unfair Competition, Trademarks and Monopolies § 51.1, at 388 (3d ed. 1969)).
 
 
 22
 Under the above authorities, plaintiffs cannot claim that the information supplied to the City constituted trade secrets. The information regarding the auto mall was of a type that is generally known and it was not reasonable under the circumstances to maintain its secrecy. An auto mall is not a unique concept or a novel idea. Auto malls exist in other cities. Indeed, in this case, plaintiffs traveled with officials from the City to southern California to discuss the auto mall concept with a local expert, and to visit and inspect numerous different auto mall complexes located there.
 
 
 23
 There is also no indication that the information in question was in fact "secret." Plaintiffs themselves have stated that information regarding the auto mall was disclosed to entities other than the City. In describing the amount of time and funds expended in developing their plans for the auto mall, plaintiffs stated that they "identified and/or introduced the City to several national, international, and local automobile executives who were interested in the project as users, including, but not limited to, Toyota, Mazda, Pontiac, General Motors, Chevrolet, Butterfield Ford, and Stephen Wade dealerships." Pls.' Notice of Claim at 2. Plaintiffs also state that they assisted the City in the formation of a Redevelopment Agency Project Area, and, aided the City in the drafting and preparation of a special zoning ordinance that enabled the auto mall development to occur. Pls.' Notice of Claim at 2-3.
 
 
 24
 Furthermore, plaintiffs knew that in the process of developing the auto mall, they would have to disclose to the City information such as the type of development, type of structure, layout of the development, identification of tenants and location of the development. There is no indication in the record that any of the documents supplied to the City regarding the auto mall, or even relating to the concept of an auto mall, were labeled "secret," or that plaintiffs took specific measures to keep the information confidential. C.f. Parrish, 642 P.2d at 735. Moreover, once the information concerning the auto mall was supplied to the City, it became "public," and, as such, was not "secret."[11] "Information that is public knowledge ... cannot be a trade secret. If an individual discloses his trade secret to others who are under no obligation to protect the confidentiality of the information, or otherwise publicly discloses the secret, his property right is extinguished." Ruckelshaus v. Monsanto Co., 467 U.S. 986, 1002, 104 S.Ct. 2862, 2872, 81 L.Ed.2d 815 (1984) (citation omitted).
 
 
 25
 We therefore find that plaintiffs have not demonstrated that they owned any trade secrets, and, thus, plaintiffs did not have a property interest that could conceivably rise to a constitutional level. Summary judgment in favor of defendants was proper.
 
 B.
 LIBERTY INTEREST
 
 26
 Plaintiffs also allege that they have been deprived of their liberty interests without due process of law. Plaintiffs' liberty interest claim is based on damage to their reputations due to alleged stigmatizing statements made by the City. Once a liberty interest is implicated, the due process protections of the Fourteenth Amendment are activated and plaintiffs must show that they were not afforded an adequate hearing. Roth, 408 U.S. at 573, 92 S.Ct. at 2707. Thus, we first examine whether there exists a liberty interest.
 
 
 27
 Plaintiffs' second amended complaint states that defendants have deprived them "of their ... liberty interests in their reputations." Second Am.Compl. p 44. Although not clear from the complaint itself, plaintiffs' liberty interest claim is apparently based on alleged defamation by the City. With regard to defamation, the second amended complaint states:
 
 
 28
 39. During the Fall of 1989, defendant J. Steven Newton issued a communication to the Deseret News, a daily newspaper published and circulated in this judicial district, which contained misrepresentations tending to harm plaintiff Paul M. Jensen's reputation and tending to deter third persons from associating or dealing with Mr. Jensen.
 
 
 29
 Second Am.Compl. p 39.
 
 
 30
 In addition, on this appeal plaintiffs contend that their reputations were injured because the City attributed to them a scheme to make money quickly by taking advantage of the City. Plaintiffs did not specifically assert this allegation in their second amended complaint, and the only specifics alleged in support of this contention are found in plaintiffs' October 20, 1989, Notice of Claim, which states:
 
 
 31
 The Mayor announced to the City Council and others that [plaintiffs] had abandoned the project and had moved his activity to Arizona, that [plaintiffs were] financially incapable of completing the project, and that [plaintiffs were] ... "fast buck" artist[s] and [were] simply out to take advantage of the City of Sandy. Further, the Mayor wrongfully represented to the City Council that [plaintiffs] had made several non-negotiable demands as a condition precedent to the development.
 
 
 32
 Pls.' Notice of Claim at 3. Although plaintiffs did not refer to these statements when pleading their liberty interest claim, to the extent that a claim for deprivation of a liberty interest can be predicated upon this allegation, we will consider it.
 
 
 33
 Liberty interests are broader and more difficult to define than property interests. "While property exists in concrete entitlements secured by independent sources of law, liberty interests cannot be so easily characterized." Bank of Jackson County v. Cherry, 980 F.2d 1362, 1367 (11th Cir.1993). It is clear, however, that "[w]here a person's good name, reputation, honor, or integrity is at stake because of what the government is doing to him," Wisconsin v. Constantineau, 400 U.S. 433, 437, 91 S.Ct. 507, 510, 27 L.Ed.2d 515 (1971), a protectible liberty interest may be implicated that requires procedural due process in the form of a hearing to clear his name. Id. Damage to one's reputation alone, however, is not enough to implicate due process protections. See Paul v. Davis, 424 U.S. 693, 701, 96 S.Ct. 1155, 1160, 47 L.Ed.2d 405 (1976) (pertinent precedents do "not establish the proposition that reputation alone, apart from some more tangible interests such as employment, is either 'liberty' or 'property' by itself sufficient to invoke the procedural protection of the Due Process Clause"); Wulf v. City of Wichita, 883 F.2d 842, 869 (10th Cir.1989); McGhee v. Draper, 639 F.2d 639, 643 (10th Cir.1981) ("[S]tigmatization or reputational damage alone, no matter how egregious, is not sufficient to support a § 1983 cause of action").
 
 
 34
 To be successful on their claim for deprivation of a liberty interest in their reputations, plaintiffs must allege and establish that there was information published that was false and stigmatizing. Wulf, 883 F.2d at 869. Moreover, "it is necessary that the alleged stigmatization be entangled with some further interest...." Allen v. Denver Pub. Sch. Bd., 928 F.2d 978, 982 (10th Cir.1991). For example, plaintiffs must allege and present evidence of present harm to established business relationships. Phelps v. Wichita Eagle-Beacon, 886 F.2d 1262, 1268 (10th Cir.1989) (discussing Corbitt v. Andersen, 78 F.2d 1471 (10th Cir.1985)). Damage to prospective employment opportunities is too intangible to constitute deprivation of a liberty interest. Id. 886 F.2d at 1269 (citing Setliff v. Memorial Hosp. of Sheridan County, 850 F.2d 1384, 1397 n. 18 (10th Cir.1988)).
 
 
 35
 Construing the undisputed facts of this case in the light most favorable to plaintiffs, we are unable to find, as a matter of law, that plaintiffs have asserted a denial of a constitutionally protected right. The Supreme Court has made it clear that a moving party is entitled to summary judgment as a matter of law where "the nonmoving party has failed to make a sufficient showing on an essential element of [the party's] case with respect to which [the party] has the burden of proof." Celotex, 477 U.S. at 323, 106 S.Ct. at 2552.
 
 
 36
 With respect to their liberty interest claim, we will be sufficiently indulgent to incorporate plaintiffs' defamation (state claim) allegations that the published statement contained misrepresentations "tending to harm plaintiff Paul M. Jensen's reputation" and "tending to deter third persons from associating or dealing with Mr. Jensen." Second Am.Compl. p 39. No actual effects on plaintiffs' businesses or associations have been alleged or supported by Rule 56 evidence. See Fed.R.Civ.P. 56; Allen, 928 F.2d at 982; Phelps, 886 F.2d at 1268-69. Query whether these allegations facially are sufficient to support a liberty interest claim; but, in any event, plaintiffs failed to present any Rule 56 evidence that would defeat a summary judgment motion based upon the lack of evidence.
 
 
 37
 We thus find that summary judgment in favor of defendants on the liberty interest claim was appropriate.
 
 IV. CONCLUSION
 
 38
 For the foregoing reasons, the district court's award of summary judgment and order of dismissal in favor of defendants is AFFIRMED.
 
 
 
 *
 Honorable Wayne E. Alley, United States District Judge for the Western District of Oklahoma, sitting by designation
 
 
 [1]
 "Auto mall" is a widely-used term describing an area or development devoted primarily to automobile dealership sites and related businesses and services
 
 
 [2]
 Plaintiffs' second amended complaint sets forth a total of sixteen separate legal claims, including state law claims for breach of contract, intentional interference with contract, negligence, breach of implied covenant of good faith and fair dealing, unjust enrichment, prima facie tort, inverse condemnation, violation of the Utah Constitution, breach of fiduciary duties, interference with prospective economic relations, misuse of public office, misappropriation of trade secrets, misappropriation of ideas, and defamation
 
 
 [3]
 Rule 56(f) provides:
 Should it appear from the affidavits of a party opposing the motion that the party cannot for reasons stated present by affidavit facts essential to justify the party's opposition, the court may refuse the application for judgment or may order a continuance to permit affidavits to be obtained or depositions to be taken or discovery to be had or may make such other order as is just.
 
 
 [4]
 D.Ut.R. 204(h) provides:
 Unless otherwise ordered, the court will not entertain any discovery motion, except those motions brought by a person appearing pro se and those brought pursuant to Fed.R.Civ.P. 26(c) by a person who is not a party, unless counsel for the moving party files with the court, at the time of filing the motion, a statement showing that the attorney making the motion has made a reasonable effort to reach agreement with opposing attorneys on the matters set forth in the motion. Such statement shall recite, in addition, the date, time, and place of such consultation and the names of all participating parties or attorneys.
 
 
 [5]
 "Courts have used this language to place conditions on the granting of a Rule 56(f) motion. Those conditions have required that discovery be completed within a specified time, that the scope, issues or persons available for discovery be limited, or that the movant be required to reimburse expenses." Patty Precision, 742 F.2d at 1264 n. 3
 
 
 [6]
 Plaintiffs' Rule 56(f) affidavit states that plaintiffs were not able to oppose defendants' motions for summary judgment for the following reasons:
 
 
 [3]
 Discovery is not yet complete. Plaintiffs timely served written discovery requests upon the Defendants Woodbury Corporation and Vestwood and timely gave notice of the deposition of Woodbury Corporation and Vestwood. Said Defendants objected to some of the written discovery requests. The deposition of Woodbury Corporation and Vestwood did not proceed on the date stated on the original notice, because Wallace Woodbury was in the Caribbean on a vacation on that date
 
 
 [4]
 Since that time, counsel for Plaintiffs and certain Defendants have held discussions pursuant to D.Ut. Rule 204(h) in order to make arrangements to have certain written discovery responses provided to Plaintiffs and to thereafter allow the deposition of Woodbury Corporation and Vestwood, by and through Wallace Woodbury, to be taken.... I believe that an agreement has now been reached whereby Defendants Woodbury Corporation and Vestwood will produce certain documents and thereafter allow the deposition of Wallace Woodbury to proceed
 
 
 [5]
 Plaintiffs took the deposition of Defendant, J. Steven Newton in December 1991, and the deposition was only recently transcribed and forwarded to the Defendant J. Steven Newton for correction and signature. Plaintiffs anticipate using the signed and corrected deposition of Defendant J. Steven Newton in opposing the Motions for Summary Judgment that have been filed, and would be prejudiced if they were not allowed to defer opposing said motions until the said Defendant has corrected and signed his deposition
 
 
 [6]
 In my opinion, the above-referenced discovery is reasonably calculated to lead to the discovery of admissible evidence that will give rise to disputed issues of fact and the application of law to fact that will assist Plaintiffs in opposing the pending Motions for Summary Judgment. Plaintiffs will be unable to fully and adequately oppose the pending Motions for Summary Judgment until the above-referenced discovery has been completed
 Pls.' Rule 56(f) aff. pp 3-6.
 
 
 [7]
 See Paul Kadair Inc. v. Sony Corp. of Am., 694 F.2d 1017, 1031 (5th Cir.1983), where the Fifth Circuit enumerates eight factors to be considered in determining whether a party has been dilatory in seeking discovery
 
 
 [8]
 Plaintiffs' second amended complaint provides in pertinent part:
 
 
 [44]
 The conspiracy and acts depriving plaintiffs of rights secured under the constitution and the laws occurred under color of governmental authority. Woodbury Corporation acted under color of state authority in conspiracy and collusion with the public defendants herein and through its agent, J. Steven Newton. The public defendants herein, and their representatives, acting under color of state authority, directly involved themselves in the affairs of Woodbury Corporation in depriving plaintiffs of rights secured under the constitution and laws. Defendants failed to give reasonable notice and a meaningful opportunity to be heard to plaintiffs prior to and after infringing upon, damaging[,] taking, using, wrongfully appropriating, or depriving them of their property interests in the Utah Automall and their liberty interests in their reputations
 Second Am.Compl. p 44.
 
 
 [9]
 According to the Utah Supreme Court:
 A trade secret, whether it be a secret formula, process, pattern, device, compilation of information or otherwise, is under the majority view held to be property, with power in the owner thereof to make use of it to the exclusion of the world or to deal with it as he pleases. As a property right, the trade secret is protected against its appropriation or use without the consent of the owner. The trade secret is a type of intellectual property, in effect, a property right in discovered knowledge.
 Muna, 625 P.2d at 696 (footnotes omitted).
 
 
 [10]
 Factors relevant to a determination whether a trade secrets exists include the following:
 (1) the extent to which the information is known outside of [the party's] business; (2) the extent to which it is known by [those] involved in his business; (3) the extent of measures taken by him to guard the secrecy of the information; (4) the value of the information to him and to his competitors; (5) the amount of effort or money expended by him in developing the information; (6) the ease or difficulty with which the information could be properly acquired or duplicated by others.
 Farnum v. G.D. Searle & Co., 339 N.W.2d 384, 389 (Iowa 1983) (quoting Restatement of Torts § 757 cmt. b (1939)).
 
 
 [11]
 The Archives and Records Services and Information Practices Act defines "public records" as follows:
 all books, papers, letters, documents, maps, plans, photographs, sound recordings, management information systems, or other documentary materials, regardless of physical form or characteristics, made or received, and retained by any state public office under state law or in connection with the transaction of public business by the public offices, agencies, and institutions of the state and its counties, municipalities, and other political subdivisions.
 Utah Code Ann. § 63-2-61(1) (1989) (emphasis added). "Under this provision, [public] disclosure is required of documentary materials made or returned ... 'in connection with the transaction of public business.' " Barnard v. Utah State Bar, 804 P.2d 526, 527 (Utah 1991).