UNITED STATES COURT OF APPEALS
TENTH CIRCUIT

**Filed 10/11/96**

---

JERRY L. CUNNINGHAM, Heir-at-Law
of Wanda June Cunningham, deceased,
and Special Administrator of the Estate of
Wanda June Cunningham, deceased,

     Plaintiff-Appellant,

v.

FREDONIA REGIONAL HOSPITAL;
and OSWALD C. BACANI, M.D.,

     Defendants-Appellees.

No. 95-3350
(D.C. No. 94-1443-PFK)
(District of Kansas)

---

**ORDER AND JUDGMENT**[*]

---

Before **SEYMOUR,** Chief Judge**; PORFILIO** and **LUCERO**, Circuit Judges.

---

Appellant Jerry Cunningham, special administrator of the estate of his deceased

wife, Wanda June Cunningham, brought suit against Fredonia Regional Hospital (the

Hospital) and Dr. Oswald Bacani raising claims under both Kansas medical malpractice

law and the federal Emergency Medical Treatment and Active Labor Act (EMTALA), 42

---

[*] This order and judgment is not binding precedent, except under the doctrines of law of the case, res judicata, and collateral estoppel. This court generally disfavors the citation of orders and judgments; nevertheless, an order and judgment may be cited under the terms and conditions of 10th Cir. R. 36.3.

U.S.C. § 1395dd(a)-(c). The district court granted the Hospital's summary judgment motion on the EMTALA claim and dismissed the pendent state law claim without prejudice. Mr. Cunningham now appeals the district court's judgment on the EMTALA claim. We affirm.

On October 7, 1992, Mrs. Cunningham visited Dr. Phillip Rindt, her family physician, complaining of chest pains, nausea, and shortness of breath. After examining Mrs. Cunningham, Dr. Rindt concluded her chest pains were not life-threatening and sent her home.

Upon returning home, Mrs. Cunningham continued to experience chest pains and became increasingly uncomfortable. That evening, unable to contact Dr. Rindt, Mr. Cunningham phoned Dr. Rindt's partner, Dr. Bacani. After listening to Mr. Cunningham describe his wife's visit to Dr. Rindt and her continued chest pains, Dr. Bacani said he would telephone the Hospital and prescribe a pain shot for Mrs. Cunningham.

Dr. Bacani phoned the Hospital and gave his instructions for Mrs. Cunningham's pain shot. When Mrs. Cunningham and her husband arrived at the emergency room, Mrs. Cunningham was examined by Nurse Jewel Allen. Because she concluded Mrs. Cunningham was not suffering from an emergency medical condition, Nurse Allen gave the prescribed pain shot and sent Mrs. Cunningham home. Later that evening, Mrs. Cunningham died after suffering a heart attack during her sleep.

Under the EMTALA, also referred to as the Patient Anti-Dumping Act, a hospital must provide to all individuals arriving in the emergency room for examination and treatment "an appropriate medical screening examination ... to determine whether or not an emergency medical condition ... exists." 42 U.S.C. § 1395dd(a). Accordingly, "a hospital violates section 1395dd(a) when it does not follow its own standard [screening] procedures." *Repp v. Anadarko Mun. Hosp.*, 43 F.3d 519, 522 (10th Cir. 1994).

In this case, Mr. Cunningham contends the district court should not have awarded summary judgment on the EMTALA claim because a question of fact existed on which Hospital screening procedure was applicable and whether the Hospital complied with the procedure. We review a grant of summary judgment de novo, applying the same standard as the district court. *Committee for the First Amendment v. Campbell*, 962 F.2d 1517, 1521 (10th Cir. 1992). "Summary judgment is appropriate when there is no genuine dispute over a material fact and the moving party is entitled to judgment as a matter of law." *Russillo v. Scarborough*, 935 F.2d 1167, 1170 (10th Cir. 1991). In reviewing the record, we consider the evidence in the light most favorable to the non-moving party. *Eaton v. Jarvis Prods. Corp.*, 965 F.2d 922, 925 (10th Cir. 1992).

Mr. Cunningham asserts the Hospital, in this case, should have followed its "INITIAL E.R. CARE FOR PATIENT WITH CHEST PAIN" policy (Chest Pain Policy) which requires a physician to examine patients presenting with "life-threatening symptoms of chest pain." Mr. Cunningham argues the Chest Pain Policy was the

- 3 -

applicable policy because his wife arrived in the emergency room complaining of chest pains. Therefore, Mr. Cunningham contends a physician, rather than a nurse, should have examined Mrs. Cunningham.

The Hospital, on the other hand, argues the relevant screening procedure is set out in the Hospital guideline entitled, "DETERMINATION OF VALID EMERGENCY ILLNESS/INJURY." (Emergency Illness Policy). Under the Emergency Illness Policy, a physician is only required to examine an emergency room patient if the patient presents "with a valid emergency illness/injury." Otherwise, "patients with straight forward [sic], straight diagnosis, and treatment with low complexity with low possibility of morbidity can be evaluated by nursing personnel" if the nursing personnel are in verbal contact with a physician for such patients. In this case, because the nursing personnel had been in contact with Dr. Bacani, and had determined Mrs. Cunningham did not suffer from an emergency illness, the Hospital asserts no physician was required to examine Mrs. Cunningham.

After examining both policies, the district court determined the Hospital was required to follow the Emergency Illness Policy. The court explained, "[a]lthough the plaintiff here alleges that the hospital was required to follow the 'chest pain' policy, it is clear from the text of this policy that it does not apply in all cases of chest pain, but rather, applies only in cases of 'potential life-threatening symptoms of chest pain.'" The court

- 4 -

then held there was no evidence the Hospital failed to comply with its standard screening procedure under the Emergency Illness Policy and thus the EMTALA claim failed.

Mr. Cunningham argues, first, Nurse Allen's deposition testimony indicates a dispute of material fact existed which hospital policy applied. However, after reviewing the record, we find Nurse Allen's testimony merely confirms, under the circumstances of this case, the Emergency Illness Policy was the applicable policy.

Nurse Allen testified had Mrs. Cunningham arrived in the emergency room without orders from her physician, Nurse Allen would have followed the Chest Pain Policy. However, because Mrs. Cunningham had already been examined by her personal physician, had been in contact with Dr. Bacani, and had arrived at the Hospital with instructions from Dr. Bacani, Nurse Allen applied the Emergency Illness Policy rather than the Chest Pain Policy. Therefore, we find unpersuasive Mr. Cunningham's argument Nurse Allen's testimony created a disputed fact sufficient to overcome summary judgment.

Mr. Cunningham next argues summary judgment was inappropriate because the text of the Chest Pain Policy is ambiguous, and the district court should have allowed the introduction of extrinsic evidence to resolve the ambiguities. We disagree.

The stated purpose of the Chest Pain Policy is to "assess and support the patient with potential life-threatening symptoms of chest pain until the physician arrives." The policy therefore unambiguously states it applies to patients with "potential life-

threatening symptoms of chest pain." If, as Mr. Cunningham argues, the policy is meant to apply in all cases of chest pain, the "potential life-threatening symptoms" language is superfluous.

Moreover, Mr. Cunningham's interpretation of the Chest Pain Policy would require Hospital physicians to see all individuals complaining of any type of chest pain. Thus, an individual exhibiting symptoms of a fractured sternum, for example, would be entitled to an examination by a Hospital physician. We find no evidence the Hospital Chest Pain Policy was intended to reach such non-emergency situations.

Rather, the record indicates it is the Emergency Illness Policy which sets out the screening procedure to determine whether an individual's illness is an emergency situation requiring an examination by a physician. Thus, if under the Emergency Illness Policy, a nurse determines an individual has "potentially life-threatening symptoms" of chest pain, then that individual must be seen by a physician. However, if, as here, the nurse determines the chest pains are not "potentially life-threatening," examination by a physician is unnecessary.

Mr. Cunningham's third argument also misses the mark. He contends the district court improperly resolved several disputed facts to conclude the Chest Pain Policy was inapplicable. In particular, Mr. Cunningham claims the court must have determined Mrs. Cunningham did not have "potential life-threatening symptoms" of chest pain and must have concluded she had a "low possibility of morbidity." However, to determine the

policy was inapplicable, the district court merely had to determine the *Hospital* did not think Mrs. Cunningham had "potentially life-threatening symptoms" of chest pain or a high possibility of morbidity. Because Mr. Cunningham failed to present any evidence to the contrary, we cannot conclude the district court erred in resolving these issues in favor of the Hospital.

Mr. Cunningham next urges, even if the Hospital followed the appropriate screening policy, this court should hold the Hospital's policy inadequate as a matter of law. However, in ***Repp***, 43 F.3d at 522 n.4, we held "[a] court should ask only whether the hospital adhered to its own procedures, not whether the procedures were adequate if followed." It is well-settled in this circuit that one panel of this court cannot overrule the decision of another panel. ***United States v. Zapata***, 997 F.2d 751, 759 n.6 (10th Cir. 1993). Accordingly, we decline to address the adequacy of the Hospital policy.

In the alternative, Mr. Cunningham requests this case be remanded to allow further discovery which the district court denied. We review the district court's refusal to postpone ruling on summary judgment pending further discovery for an abuse of discretion. ***See, e.g., Building and Constr. Dep't. v. Rockwell Int'l Corp.***, 7 F.3d 1487, 1496 (10th Cir. 1993). The party requesting additional discovery must show how further discovery will permit rebuttal of the movant's arguments. ***See, e.g., Jensen v. Redevelopment Agency of Sandy City,*** 998 F.2d 1550, 1554 (10th Cir. 1993). Based on

the evidence in the record, Mr. Cunningham has not shown how additional discovery would indicate the Hospital failed to follow applicable screening procedures.

We conclude Mr. Cunningham has failed to state a claim under EMTALA because the evidence in the record indicates the Hospital followed its standard screening procedure and determined Mrs. Cunningham did not suffer from an emergency medical condition. This decision, however, leaves unaffected Mr. Cunningham's malpractice claim.

**AFFIRMED.**

**ENTERED FOR THE COURT**

**John C. Porfilio, Circuit Judge**