**F I L E D**
**United States Court of Appeals**
**Tenth Circuit**

**SEP 26 2001**

**PATRICK FISHER**
**Clerk**

**UNITED STATES COURT OF APPEALS**

**FOR THE TENTH CIRCUIT**

---

ROBERT FLORES, individually;
KELLY FLORES, individually;
PIONEER BANK & TRUST, as
Trustee for Michael Flores, a minor,

      Plaintiffs-Appellants,

v.

U.S. REPEATING ARMS
COMPANY, INC., d/b/a Winchester,
d/b/a Winchester Arms; OLIN
CORPORATION, d/b/a Olin Arms
Corporation,

      Defendants-Appellees.

Nos. 00-6324 & 01-6076
(D.C. No. 00-CV-66-A)
(W.D. Okla.)

---

**ORDER AND JUDGMENT** *

---

Before **HENRY** , **BRISCOE** , and **MURPHY** , Circuit Judges.

---

      After examining the briefs and appellate records in these related appeals,

this panel has determined unanimously to grant the parties' request for a decision

---

\*     This order and judgment is not binding precedent, except under the
doctrines of law of the case, res judicata, and collateral estoppel. The court
generally disfavors the citation of orders and judgments; nevertheless, an order
and judgment may be cited under the terms and conditions of 10th Cir. R. 36.3.

on the briefs without oral argument. *See* Fed. R. App. P. 34(f); 10th Cir. R. 34.1(G). These cases are therefore ordered submitted without oral argument.

Michael Flores, a minor, was shot and permanently injured when a Winchester 30-30 caliber repeating rifle (the "Rifle") accidently discharged. Plaintiffs, Michael's parents and trustee, claim the Rifle had a defective safety mechanism and filed a products liability and negligence action against defendants, seeking to hold them liable for Michael's injuries.

Defendant Olin Corporation owns and licenses the Winchester trademark. However, it sold its firearm manufacturing business in 1981 to a Connecticut corporation then known as U.S. Repeating Arms Company, but later known as CARSU, Inc. ("CARSU"). It is undisputed that CARSU manufactured the Rifle in 1983, while it was still named U.S. Repeating Arms Company. CARSU filed for bankruptcy in 1986 and, upon confirmation of the plan of reorganization, changed its name to CARSU. As part of its 1987 plan of reorganization, a majority of CARSU's assets were sold to the other defendant in this case, New Haven Arms Company, a Massachusetts corporation, which changed its name to U.S. Repeating Arms Company ("USRAC"). CARSU was dissolved in 1990.

*Appeal No. 00-6324*

On cross-motions for summary judgment, the district court, sitting in diversity and applying Oklahoma law, granted defendants' motion for summary judgment, finding that neither defendant manufactured, distributed or sold the Rifle, that USRAC was not liable under any theories of successor liability, and that Olin was not liable under general partnership law. [1] We review a district court's determinations of state law in a diversity case such as this de novo. *Salve Regina Coll. v. Russell*, 499 U.S. 225, 231 (1991). Further, "[w]e review the district court's grant of summary judgment de novo, applying the same legal standard used by the district court." *Simms v. Okla. ex rel. Dep't of Mental Health & Substance Abuse Servs.*, 165 F.3d 1321, 1326 (10th Cir. 1999). Summary judgment is appropriate "if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law." Fed. R. Civ. P. 56(c).

Under Oklahoma law, the general rule is that "where one company sells or otherwise transfers all its assets to another company, the latter is not liable for the

---

[1] Although plaintiffs identify Olin as an appellee, they do not claim on appeal that the district court erred in granting summary judgment in favor of Olin. Thus, plaintiffs waived any right to appellate review of that judgment. *See State Farm Fire & Cas. Co. v. Mhoon*, 31 F.3d 979, 984 n.7 (10th Cir. 1994).

debts and liabilities of the transferor." *Pulis v. United States Elec. Tool Co.*, 561 P.2d 68, 69 (Okla. 1977). In *Pulis*, the Oklahoma Supreme Court recognized four exceptions to this general rule:

> (1) Where there is an agreement to assume such debts or liabilities (2) Where the circumstances surrounding the transaction warrant a finding that there was a consolidation or merger of the corporations, or (3) that the transaction was fraudulent in fact or (4) that the purchasing corporation was a mere continuation of the selling company.

*Id.*

Plaintiffs claim on appeal that the fourth exception applies in this case: that although USRAC did not manufacture, distribute or sell the Rifle, it should nevertheless be liable for Michael's injuries because it is a "mere continuation" of CARSU, the Rifle's manufacturer. [2] To determine whether a corporation has successor liability under the mere continuation exception, Oklahoma courts examine whether the selling corporation ceased to exist after the sale of assets to the purchasing corporation, and whether there was a common identity of directors, officers and stockholders before and after the sale. *See id.* at 71.

USRAC filed a motion for summary judgment contending that it was not a mere continuation of CARSU. It presented an affidavit from its president, Don

---

[2] Plaintiffs argued before the district court that the first, second and fourth *Pulis* exceptions applied, but on appeal plaintiffs claim only that the district court erred in rejecting their "mere continuation" theory of liability.

Gobel, which stated that CARSU "continues to exist with assets in excess of $1,000,000," and that "[i]n comparing the current [USRAC] to the former [USRAC, now CARSU], there is independent management; different employees [and] no common officers or directors." Aplt. App., Vol. II at 468.

Plaintiffs responded and filed a cross-motion for summary judgment. Although plaintiffs alleged there were common officers and employees, the only supporting evidence they presented was a statement in CARSU's 1987 plan of reorganization stating that USRAC *intended* to offer the position of executive vice-president to Richard Pelton, who, in 1987, was the president and chief executive officer of CARSU. Plaintiffs did not present any evidence, however, indicating that Mr. Pelton accepted the offer or ever became an officer of USRAC. Indeed, plaintiffs failed to present *any* evidence demonstrating a common identity of directors, officers and stockholders between CARSU and USRAC. Further, although plaintiffs presented evidence that CARSU had been dissolved in 1990 for failing to file certain reports, they did not dispute that CARSU continued to exist for several years after the sale of its assets, nor did they dispute USRAC's evidence that CARSU had $1,000,000 in assets after the 1987 sale of assets to USRAC. The district court granted USRAC's motion for summary judgment because plaintiffs failed to present evidence that USRAC was a mere continuation of the CARSU corporate entity, that is, they failed to present

evidence that CARSU ceased to exist after the sale of assets to USRAC or evidence of a common identity of directors, officers and stockholders between CARSU and USRAC.

On appeal, plaintiffs contend the district court erroneously considered USRAC's evidence that USRAC did not currently have any common officers or directors and failed to consider whether there had been directors and officers in common immediately following the sale of assets. Yet, in none of their summary judgment pleadings did plaintiffs ever present any evidence to the district court indicating that there were common officers or directors at any time following the sale. Further, plaintiffs did not challenge or contradict Mr. Gobel's affidavit. As the district court stated, the record "reflects no effort by plaintiffs to depose Mr. Gobel" concerning his testimony or to depose "Mr. Pelton concerning his relationship with USRAC." Aplt. App., Vol. I at 16.

Plaintiffs contend it was error for the district court to grant summary judgment in the absence of evidence concerning any commonality of management immediately following the sale. They cite *Pulis*, in which the Oklahoma Supreme Court refused to grant summary judgment in favor of the defendant corporation because the record was "void of any specific information about the seller corporation's business activities after the sale." 561 P.2d at 72. Plaintiffs further claim they should not be faulted for not supplying such evidence because USRAC

is in a better position to provide specific information regarding the factors enumerated in *Pulis*.

These arguments are unavailing. Unlike the facts in *Pulis*, the record before the district court was not "void" of information concerning the activities of CARSU after the sale. Plaintiffs did not present any evidence disputing USRAC's evidence that CARSU retained $1,000,000 in assets, had independent management, and remained in existence for several years after the sale. Thus, the undisputed evidence in front of the district court demonstrated that CARSU and USRAC "were distinct corporate entities after the sale," *Goucher v. Parmac, Inc.*, 694 P.2d 953, 954 (Okla. Ct. App. 1984), that CARSU continued to exist and function after the sale of assets, and that the sale was not a mere reorganization of the selling corporation, *see Pulis*, 561 P.2d at 71. On this basis, the district court properly concluded that USRAC had met its burden of demonstrating it was entitled to judgment as a matter of law and that plaintiffs failed to meet their burden.

> While the [summary judgment] movant bears the burden of showing the absence of a genuine issue of material fact, the movant need not negate the non-movant's claim, but need only point to an absence of evidence to support the non-movant's claim. If the movant carries this initial burden, the non-movant may not rest upon its pleadings, but must set forth specific facts showing a genuine issue for trial as to those dispositive matters for which it carries the burden of proof.

*Kaul v. Stephan*, 83 F.3d 1208, 1212 (10th Cir. 1996) (quotation and citation omitted). We agree with the district court's conclusion that "[p]laintiffs' failure to respond to USRAC's summary judgment [motion] with sufficient facts to create a genuine issue as to the applicability of the continuation exception entitles USRAC to entry of summary judgment in its favor." Aplt. App., Vol. I at 19.

Plaintiffs next assert the district court erred in denying their request for additional discovery. Federal Rule of Civil Procedure 56(f) allows a district court to order discovery when the affidavits of a party indicate that the party "cannot . . . present by affidavit facts essential to justify the party's opposition [to summary judgment]." *Id.*

> However, Rule 56(f) does not operate automatically. Its protections must be invoked and can be applied only if a party satisfies certain requirements. . . . A prerequisite to granting relief [pursuant to Rule 56(f)] . . . is an affidavit furnished by the nonmovant. Although the affidavit need not contain evidentiary facts, it must explain why facts precluding summary judgment cannot be presented. This includes identifying the probable facts not available and what steps have been taken to obtain these facts. In this circuit, the nonmovant also must explain how additional time will enable him to rebut movant's allegations of no genuine issue of fact.

*Price ex rel. Price v. W. Res., Inc.*, 232 F.3d 779, 783 (10th Cir. 2000) (quotations omitted). Essentially, the party must show precisely how additional discovery will lead to a genuine issue of material fact. *See Jensen v. Redevelopment Agency of Sandy City*, 998 F.2d 1550, 1554 (10th Cir. 1993). "Furthermore, if the party

-8-

filing the Rule 56(f) affidavit has been dilatory, . . . no extension will be granted." *Id*.

We review a denial of a Rule 56(f) motion for an abuse of discretion. *Price,* 232 F.3d at 783. We have reviewed the record and agree with the district court's conclusion that plaintiffs failed to comply with Rule 56(f)'s requirements. The cursory affidavit filed by plaintiffs' counsel requesting additional time to depose Messrs. Gobel and Pelton failed to explain why plaintiffs had not previously deposed these witnesses and failed to explain with any specificity how additional time would enable them to rebut USRAC's motion. It appears from our review of the record that plaintiffs did little if any discovery while this case was pending. They failed to pursue their few outstanding discovery requests, which were served six months prior to USRAC's motion for summary judgment, and made no attempt to depose key witnesses until more than two months after USRAC filed its summary judgment motion. We agree with the district court that plaintiffs had "ample opportunity to discover all facts necessary to their claims during the one-year pendency of this case." Aplt. App., Vol. I at 16 (footnote omitted). Thus, we hold that the district court did not abuse its discretion in denying relief under Rule 56(f).

More than four months after the district court granted summary judgment, and while their first appeal was pending, plaintiffs filed a motion for new trial under Fed. R. Civ. P. 60(b). Plaintiffs presented an affidavit from Mr. Pelton stating that, immediately following the sale of assets to USRAC, CARSU was not involved in any business activities, had no remaining assets, no employees, and did not function as a corporation. He also stated that CARSU and USRAC had at least six common officers immediately following the sale.

Plaintiffs claim they are entitled to a new trial under Rule 60(b)'s first three grounds for relief: "(1) mistake . . .; (2) newly discovered evidence which by due diligence could not have been discovered in time to move for a new trial . . . ; [and] (3) fraud . . ., misrepresentation, or other misconduct of an adverse party." *Id*. They claim the fact that Mr. Gobel's affidavit was stated in the present tense misled them and the district court to mistakenly conclude that CARSU and USRAC did not have common officers immediately before and after the sale of assets.

We review the district court's denial of Rule 60(b) relief for abuse of discretion. *Massengale v. Okla. Bd. of Exam'rs in Optometry*, 30 F.3d 1325, 1330 (10th Cir. 1994). "Relief under Rule 60(b) is extraordinary and may only be

granted in exceptional circumstances." *Bud Brooks Trucking, Inc. v. Bill Hodges Trucking Co.*, 909 F.2d 1437, 1440 (10th Cir. 1990).

To prevail on a Rule 60(b)(3) motion, a movant must prove the adverse party committed the alleged fraud, misrepresentation, or misconduct by clear and convincing evidence. *Anderson v. Dep't of Health & Human Servs.*, 907 F.2d 936, 952 (10th Cir. 1990). Further, the movant must show that the alleged misrepresentations prevented him from fully and fairly presenting his case. *See Walsh v. McCain Foods Ltd*., 81 F.3d 722, 726 (7th Cir. 1996); 11 CHARLES A. WRIGHT, ARTHUR R. MILLER & MARY KAY KANE, FEDERAL PRACTICE AND PROCEDURE § 2860 (2d ed. 1995). Plaintiffs have not shown either requirement. Mr. Gobel's affidavit was clearly stated in the present tense and he plainly made no representation as to existence of any common officers or directors immediately following the sale. Plaintiffs were in no way prevented from investigating his statements, from deposing him in order to further probe his knowledge, or from conducting their own discovery.

Plaintiffs also failed to show that, with due diligence, they could not have deposed Mr. Gobel, located and deposed Mr. Pelton, or obtained corporate records to establish the identity of any common officers or directors before and after the sale or to ascertain whether CARSU continued to exist and function as a separate corporate entity after the sale. Thus, plaintiffs did not establish

mistake or surprise under Rule 60(b)(1). *See Yapp v. Excel Corp.*, 186 F.3d 1222, 1231 (10th Cir. 1999) ("the kinds of mistakes remediable under a Rule 60(b)(1) motion are litigation mistakes that a party could not have protected against"). Nor can the evidence submitted in plaintiffs' Rule 60(b) motion be considered "newly discovered" under Rule 60(b)(2); plaintiffs could have acquired it earlier had they been properly diligent. *See Harris v. Illinois-California Express, Inc.*, 687 F.2d 1361, 1375 (10th Cir. 1982) (holding that failure to exercise due diligence precludes relief under Rule 60(b)(2)). Thus, the district court did not err in denying plaintiffs' Rule 60(b) motion.

AFFIRMED.

Entered for the Court

Mary Beck Briscoe
Circuit Judge