**F I L E D**
**United States Court of Appeals**
**Tenth Circuit**

**July 13, 2005**

**PATRICK FISHER**
**Clerk**

**UNITED STATES COURT OF APPEALS**

**FOR THE TENTH CIRCUIT**

HENRY CHAVEZ,

      Plaintiff - Appellant,

  v.

ROBERT PERRY, Secretary of
Corrections; JEFF SERNA,
Classification Bureau Chief; DONNA
M. MARTINEZ, Deputy
Classification Bureau Chief;
DONALD DORSEY, Warden,
Torrance County Detention Facility;
BILL PENNYCUFF, Chief of
Security; RAMIRO E. RODRIGUEZ,
Warden of Security; JOE R.
WILLIAMS, Senior Warden, Lea
County Correctional Facility;
PATRICK W. SNEDEKER, Warden of
Security; BARRY HERTZOG,
Warden of Segregation; JOHN/JANE
DOE, individually and in their official
capacities; DANIEL MITTON;
STEVE KIDD; BILLY RYE,

      Defendants - Appellees.

No. 04-2011
(D.C. No. CIV-00-92-WJ/LFG)
(D. N.M.)

**ORDER AND JUDGMENT**  *

---

\*    This order and judgment is not binding precedent, except under the
doctrines of law of the case, res judicata, and collateral estoppel. The court
generally disfavors the citation of orders and judgments; nevertheless, an order
and judgment may be cited under the terms and conditions of 10th Cir. R. 36.3.

Before **SEYMOUR**, **McCONNELL**, and **TYMKOVICH**, Circuit Judges.

---

After examining the briefs and appellate record, this panel has determined unanimously that oral argument would not materially assist the determination of this appeal. *See* Fed. R. App. P. 34(a)(2); 10th Cir. R. 34.1(G). The case is therefore ordered submitted without oral argument.

Plaintiff Henry Chavez appeals from several orders culminating in the entry of adverse judgments on all pertinent claims asserted in this prison civil rights action.[1] We summarize the relevant factual allegations and procedural history and then take up each challenged order, in turn, below. In some instances, we hold that plaintiff has waived the objections advanced on appeal; in most instances, though, we reach the merits of the issues raised and affirm for the reasons stated in the consistently thorough and thoughtful orders entered throughout the course of this extended litigation.

## Factual Background

Plaintiff, a protective-custody inmate in the New Mexico prison system, claims that defendants violated his Eighth Amendment guarantee against cruel and unusual punishment and his Fourteenth Amendment right to due process in

---

[1] Several claims not otherwise disposed of by the orders under review were settled and dismissed with prejudice before plaintiff filed the notice of appeal.

-2-

connection with his transfer to and confinement at various correctional facilities where he was attacked by other inmates. [2] This unfortunate odyssey through New Mexico's correctional facilities began in 1997, when plaintiff was serving time at Southern New Mexico Correctional Facility (Southern).

Plaintiff alleges that defendant Serna, as state Classification Bureau Chief, approved his transfer from Southern to Western New Mexico Correctional Facility (Western) for protective custody because of "enemies" he has throughout the New Mexico prison system. He was assaulted by an inmate at Western in February 1998 (an incident for which he seeks no redress here), however, and was recommended for return to Southern, then being reconstructed to house protective custody inmates. He alleges defendant Serna approved the return to Southern as well, but it was not carried out.

Instead of a transfer to Southern, Serna changed plaintiff's paperwork to reflect a transfer, in March 1998, to Torrance County Detention Facility (TCDF), a private institution that Chavez claimed housed violent inmates and lacked facilities or staff to securely house protective custody prisoners. As a result,

---

[2]     At points in his pleadings, plaintiff complains of a lack of access to prison law library facilities. On sua sponte review, however, the district court dismissed any access-to-courts claim for lack of any allegations regarding interference with plaintiff's preparation/filing of case materials actionable under *Lewis v. Casey*, 518 U.S. 343 (1996). Although on appeal he continues to complain in passing of limited access to prison libraries, he has not challenged the district court's ruling under *Lewis*. We therefore do not consider the matter further here.

plaintiff was housed in a way that showcased his protective status and provided no real protection from the general population. On several occasions, he complained to defendants Dorsey and Pennycuff about harassing and threatening behavior by inmates just outside the protective unit and asked that the unit be moved to a more secure area at TCDF. He claims that adequate measures were not taken in response to these complaints and requests.

On June 20, 1998, during a visit to the TCDF law library, plaintiff was assaulted by inmates from the general prison population. He informed defendant Rodriguez about the assault, requested an investigation of the incident, and asked for additional security, such as posting an officer at the library during visits by protective custody inmates. Rodriguez allegedly did not conduct an investigation and failed to improve library security. Plaintiff's effort to address library security issues through the grievance procedure and by talking with defendant Pennycuff were likewise fruitless.

On July 25, 1998, general population inmates again assaulted plaintiff in the law library. In addition to inaction by defendants Rodriguez and Pennycuff, plaintiff blames this attack on defendants Baca and Jaramillo, who he claims were aware of protective custody inmates' vulnerability to assault by the general prison population but failed in their responsibility to ensure that the library was monitored by an officer when protective custody prisoners were there. He also

alleges that defendant Dorsey had ordered the library moved from a relatively safe location in the education department to a main hallway accessible to all inmates at TCDF, despite the risk this posed for protective custody prisoners.

In March and April 1998, plaintiff corresponded with defendants Serna and Martinez (Serna's assistant) about obtaining a transfer from TCDF to Southern. Martinez initially told plaintiff he was approved for the transfer. But, on August 1, 1998, after Serna and Martinez changed the relevant paperwork, he was sent instead to Lea County Correctional Facility (LCCF), another private institution with violent inmates that lacked facilities for housing protective custody inmates. Plaintiff entered the general population and within days was assaulted by another inmate. Two days later, he was moved to a new protective custody pod that, situated in the middle of the general population space, again showcased the status of the protective custody inmates. During the move, he was assaulted by prison officers. The next day, he was assaulted by inmates from the general population who had been allowed into the pod by prison officers assigned to stand guard. Protective custody inmates walked to the cafeteria down halls through the general population, and at meals had to check food for contamination by poisonous chemicals from the kitchen, dangerous objects, and bodily fluids added by general population inmates. Events at LCCF gave rise to claims that were settled by the defendants associated with that facility. These events also,

however, implicate defendants Serna and Martinez, who allegedly approved his transfer there.

While touring LCCF sometime in August or September 1998, defendant Martinez spoke with plaintiff about problems there. Plaintiff also sent a letter to Serna again requesting a transfer to Southern for long term protective custody. A month later, plaintiff was sent to Southern. Within two weeks, he was assaulted again, this time by inmates that had recently been transferred from LCCF, where they had learned of plaintiff's protective custody status.

In January 1999, plaintiff's security level dropped from medium to minimum and he was told that he would have to be transferred to an appropriate facility. He requested a transfer to Western, as it was a minimum security prison that accommodated protective custody inmates. The request was approved by Southern officials and recommended to defendant Serna for final approval. In the end, however, he was transferred to Central New Mexico Correctional Facility (Central), a medium security prison. Within weeks he was assaulted by inmates who knew him to be a protective custody prisoner from LCCF. Shortly thereafter, he was transferred to Western, where he was placed in administrative segregation due to the presence of documented enemies there. In May 1999, he was transferred back to Southern, where he was able to take advantage of recreational,

-6-

educational, and work opportunities and did not have to worry about being assaulted.

In September 1999, however, he was shipped with two hundred protective custody inmates to LCCF, which he claims was still severely understaffed and did not adequately secure protective custody prisoners from other violent inmates. He was assaulted on the transport bus on the way to LCCF and then placed in a housing unit where he was exposed to daily threats from those outside and denied adequate recreational and educational opportunities. He sent a letter to defendant Serna requesting a transfer back to Southern. Defendant Martinez replied that the Classification Bureau was aware of his complaints and desire for a transfer, but that he would remain at LCCF. Martinez assured him that she had told the associate warden at LCCF to ensure that he was housed with inmates of the same status. That direction was not carried out. He continues to be the object of insult, humiliation, threats, and attempted violence all undeterred by LCCF staff (again, who have settled the claims asserted against them).

## Procedural Background

Plaintiff brought this suit against numerous defendants, who have naturally been aggregated into groups. The district court referred to TCDF warden Dorsey, security chief Pennycuff, and security warden Rodriguez, as "CCA defendants," because TCDF is owned by the Corrections Corporation of America. The court

referred to TCDF officers Baca and Jaramillo, whom it discussed separately from the CCA defendants given their distinct and limited role in the case (the single instance of failing to assign a monitor to the library), as "John Doe defendants," in light of their generic designation in the caption of the initial pleadings. The court discussed defendants Serna and Martinez together given the intrinsically yoked claims asserted against them for the transfers they ordered/failed to order in their role with the Classification Bureau. Defendant Perry, whose remote connection to the case as state Secretary of Corrections is unique to him, was treated separately. Finally, the LCCF officials, who as noted above have settled with plaintiff, were referred to as "Wackenhut defendants," because LCCF is owned by Wackenhut Corrections Corporation.

The complaint asserted three claims. First, plaintiff claimed officers Serna and Martinez violated his due process rights by failing to provide him "reasonable notice and a committee hearing before forcing him back into any general population at any correctional facility." R. Vol. 1 doc. 1, at 23. Second, he claimed his Eighth Amendment rights were violated when Serna and Martinez transferred him to TCDF and LCCF with deliberate indifference to his safety and when officials there acted with deliberate indifference in failing to provide

personal protection and safe housing during his confinement.[3] *Id.* at 23-24. Finally, he claimed the conduct of all defendants made them liable under state law for the intentional infliction of emotional distress. *Id.* at 25.

The orders challenged on appeal were issued as follows. In April 2000, Secretary Perry was dismissed from the case under 28 U.S.C. § 1915(e)(2) for lack of factual allegations linking him to the claims asserted. In January 2001, the district court issued two orders. One dismissed the Eighth Amendment claim against officers Baca and Jaramillo, because their conduct evinced negligence rather than the deliberate indifference required for a constitutional violation, and dismissed the intentional infliction claim against all CCA defendants, because none of their alleged conduct was extreme or outrageous enough to give rise to liability under state law. The other order granted summary judgment to Serna and Martinez on the Eighth Amendment claim, because plaintiff had not shown they even knew of the risks to which he alleged they had been deliberately indifferent.[4] In November 2002, the court denied plaintiff's motion to amend his complaint. In

_____

[3] Unlike the claims asserted against certain officers at LCCF, which have been settled and do not concern us on this appeal, the claims asserted against TCDF officials involve the failure to protect plaintiff from other inmates but do not entail any violence committed by prison officers themselves.

[4] In a third order issued at the same time, the court dismissed the due process and intentional infliction claims against Serna and Martinez because plaintiff had elected not to challenge the magistrate judge's recommended disposition of these claims. That order is not under review on this appeal.

March 2003, the court dismissed the remaining Eighth Amendment claims against the CCA defendants for failure to exhaust prison remedies. After plaintiff settled with the Wackenhut defendants, he brought this appeal.

Plaintiff's appellate brief is divided into five argument headings that do not, however, match up one-for-one with the five orders under review. We will address the arguments as plaintiff has set them out, though in some instances using a different organizational format for our analysis under each.

**I. Sua Sponte Dismissal of Claims against Secretary Perry, Dismissal of Eighth Amendment Claim against Officers Baca and Jaramillo, and Dismissal of Intentional Infliction Claim.**

**A. Secretary Perry**

The complaint includes a single conclusory reference to Secretary Perry. After noting plaintiff's transfer back to LCCF in September 1999, the complaint states, "[u]pon information and belief, Plaintiff alleges that Defendants Robert J. Perry, Jeff Serna, and other [New Mexico Corrections Department] employees approved this transfer." R. Vol. 1 doc. 1, at 16. While other factual allegations in the complaint give an indication of Serna's role as Classification Bureau Chief (and that of his assistant, Martinez) in authorizing inter-prison transfers generally and the particular transfers in this case, nowhere does the complaint tie the state Secretary of Corrections to inter-prison transfer decisions, let alone this transfer to LCCF in particular. Similarly, while plaintiff alleged some facts touching on

Serna's and Martinez's awareness of his complaints and requests regarding placement in the state prison system, there is nothing in the pleadings to suggest Secretary Perry had any knowledge of such matters.

In pro se cases as in others, "conclusory allegations without supporting factual averments are insufficient to state a claim on which relief can be granted." *Hall v. Bellmon*, 935 F.2d 1106, 1110 (10th Cir. 1991) (citing numerous cases). And this court "will not supply additional factual allegations to round out a [pro se] plaintiff's complaint." *Whitney v. New Mexico*, 113 F.3d 1170, 1173-74 (10th Cir. 1997); *see Dunn v. White*, 880 F.2d 1188, 1197 (10th Cir. 1989) ("Although we must liberally construe [a pro se] plaintiff's factual allegations [under *Haines v. Kerner*, 404 U.S. 519, 520-21 (1972)], we will not supply additional facts, nor will we construct a legal theory for plaintiff that assumes facts that have not been pleaded."). The district court did not err in dismissing the claims asserted against Secretary Perry. We note that plaintiff subsequently sought to file an amended complaint, one minor aspect of which was an effort to assert a more substantial claim against Perry. The district court's rejection of this belated attempt to shore up and expand the pleadings is considered – and affirmed – in a later part of this order and judgment.

**B. TCDF Officers Baca and Jaramillo**

The complaint alleges that officers Baca and Jaramillo "were responsible for keeping the law library secure and were responsible for assigning an officer to monitor the law library while protective custody inmates were there but failed to do so." R. Vol. 1 doc. 1, at 8. As the district court noted, however, there is no claim made that the omission was intentional. Absent any factual allegation that the failure to assign a library monitor reflected a deliberate course of action, the claim asserted against Baca and Jaramillo involved nothing over and above the neglect of a duty of care, i.e., negligence. The Supreme Court has stated on many occasions and in various prison contexts that negligent, inadvertent, or accidental nonfeasance will not support an Eighth Amendment claim. *See, e.g.*, *Farmer v. Brennan*, 511 U.S. 825, 840 (1994); *Wilson v. Seiter*, 501 U.S. 294, 305 (1991); *Whitley v. Albers*, 475 U.S. 312, 319 (1986); *Estelle v. Gamble*, 429 U.S. 97, 105-06 (1976). Plaintiff did allege that the defendants were aware of the risk involved, *see* R. Vol. 1 doc. 1, at 8, but that does not address the critical legal deficiency identified by the district court regarding the requisite character of the action or omission taken in the face of the risk.

Plaintiff raises two additional objections on appeal, neither of which has merit. First, he argues that because the district court did not dismiss his claims against Baca and Jaramillo sua sponte under § 1915(e)(2) when it dismissed the

case against Secretary Perry, the former were not thereafter subject to dismissal for pleading deficiencies. This argument is based on a basic misunderstanding of federal procedure. The absence of a sua sponte ruling on the legal insufficiency of a claim signifies only that no decision on the point has been made; it is not an affirmative, binding validation of the legal sufficiency of the pleading. Indeed, if it were, in forma pauperis pleadings would be immune from attack by routine adversarial motion under Fed. R. Civ. P. 12(b), a proposition belied by the most basic case law.

Plaintiff's second argument is that omission of Baca and Jaramillo from the Rule 12(b) motion filed by the other CCA defendants precluded the magistrate judge and district court from considering dismissal of the former in connection with the motion. The problem this procedural scenario raises relates to plaintiff's notice of and opportunity to oppose the proposed dismissal of his claims against Baca and Jaramillo. But such due process concerns are allayed where, as here, the party adversely affected by a magistrate judge's unanticipated consideration of an issue subsequently had the opportunity to address it in objections to the magistrate judge's ensuing recommendation. *See, e.g.*, *Dodd Ins. Servs., Inc. v. Royal Ins. Co. of Am.*, 935 F.2d 1152, 1160 (10 th Cir. 1991); *Vanderberg v. Donaldson*, 259 F.3d 1321, 1324 (11 th Cir. 2001).

## C. Intentional Infliction of Emotional Distress

Under New Mexico law, a claim for intentional infliction of emotional distress (IIED) requires a showing that "(1) the conduct in question was extreme and outrageous; (2) the conduct of the defendant was intentional or in reckless disregard of the plaintiff; (3) the plaintiff's mental distress was extreme and severe; and (4) there is a causal connection between the defendant's conduct and the claimant's mental distress." *Trujillo v. N. Rio Arriba Elec. Coop., Inc.*, 41 P.3d 333, 342 (N.M. 2001) (quotation omitted). The requisite nature of the conduct is captured in the following formulation: "'so outrageous in character, and so extreme in degree, as to go beyond all possible bounds of decency, and to be regarded as atrocious, and utterly intolerable in a civilized community.'" *Id.* (quoting Restatement (Second) of Torts § 46 cmt. d.). First-line enforcement of this restrictive formulation is entrusted to the trial court, which must initially "determine[] as a matter of law whether conduct reasonably may be regarded as so extreme and outrageous that it will permit recovery under the tort." *Padwa v. Hadley*, 981 P.2d 1234, 1237 (N.M. Ct. App. 1999) (following Restatement (Second) of Torts § 46 cmt. h); *see also Morales v. Reynolds*, 97 P.3d 612, 617 (N.M. Ct. App. 2004) (explaining purpose of court's pre-trial screening function with respect to IIED claims). But, if "reasonable persons may differ on that

-14-

question, it is for the jury to decide, subject to the oversight of the court." *Id.* (quotation omitted)

Here, the district court recited the proper standard and concluded that the conduct alleged did not rise to the level required for an IIED claim. We agree. We do not discount the seriousness of prison violence and it is important to keep in mind that we are not considering whether the assaults plaintiff suffered at the hands of other inmates are themselves intolerable – they are. The issue here is whether the acts and omissions of defendants alleged in the complaint, which allegedly fell short of what should or could have been done to prevent the assaults, qualify as "extreme" and "outrageous" under the legal standards recited above.[5] Plaintiff does not cite a single case in which an IIED claim was made out on similar facts, nor have we found any. The cases on which he relies, involving abusive conduct directed at the plaintiff in situations far removed from the exigencies and turbulence unavoidable in prison life, are not relevant here. In our view, the district court rightly concluded that New Mexico courts would not recognize an IIED claim under the circumstances alleged in the complaint.

---

[5] We are concerned only with Baca and Jaramillo, the CCA defendants, Serna and Martinez, and Perry, none of whom allegedly assaulted plaintiff or purposely assisted other inmates in doing so. Such conduct was alleged only with respect to the Wackenhut defendants, who are no longer in the case.

**II. Grant of Summary Judgment for Serna and Martinez**

The district court held that plaintiff had not demonstrated a triable issue in support of his claim that defendants Serna and Martinez acted with deliberate indifference when assigning him to prisons in the state system, in particular the privately run facilities at TCDF and LCCF. Plaintiff challenges this ruling in two respects. First, on the merits, he insists the court focused solely on his failure to inform the defendants of the particular personal risks he faced at the facilities and overlooked the broad systemic risk for protective custody inmates that defendants also allegedly ignored. Second, he contends the court erred procedurally in ruling on summary judgment without affording him necessary discovery. We review the substantive challenge de novo and the discovery issue for an abuse of discretion, *Handy v. Price*, 996 F.2d 1064, 1066, 1068 (10 th Cir. 1993), and affirm. [6]

---

[6] Defendants argue that plaintiff waived appellate review by not filing timely objections to the magistrate judge's recommendation adopted by the district court. This argument rests on a compound error: defendants miscalculate the deadline by ignoring Fed. R. Civ. P. 6(a) & (e) (excluding weekends for periods of less than eleven days, and adding three days to any period following service by mail), *see Theede v. United States Dep't of Labor*, 172 F.3d 1262, 1266 (10 th Cir. 1999), and they misidentify plaintiff's filing date by ignoring the prison mailbox rule, *see Dunn v. White*, 880 F.2d 1188, 1190 (10 th Cir. 1989) (applying *Houston v. Lack*, 487 U.S. 266 (1988), to inmate's objection to magistrate judge recommendation). Plaintiff timely requested an extension within the time for filing his objections, which was granted. We do note, however, that plaintiff limited his extension request and his ensuing objections to his Eighth Amendment claim against Serna and Martinez, which is also the only claim he pursues against them on appeal.

The district court adopted the magistrate judge's recommendation to hold that plaintiff's claim against Serna and Martinez failed for lack of evidence on the subjective intent prong of the Eighth Amendment standard, i.e., that they " *kn[ew] of* and *disregard* [*ed*] an excessive risk to [his] health and safety." *Farmer* , 511 U.S. at 837 (emphasis added). As a general matter, plaintiff's objection that the court reached this conclusion by considering only his personal correspondence with defendants (which was facially inadequate to demonstrate the requisite risk) and disregarding his claim of broad security deficiencies for protective custody inmates is belied by the magistrate judge's analysis, the first section of which specifically addresses the latter issue. *See* R. Vol. 1 doc. 43, at 8-10.

The magistrate judge acknowledged precisely the argument plaintiff now emphasizes: "that Serna and Martinez were generally aware, or should have been aware, that TCDF and LCCF were not equipped to handle protective custody inmates and were further aware that the classification system of the Department of Corrections was flawed, and their actions in placing [plaintiff] in these institutions, without adequate classification procedures, constitutes deliberate indifference." *Id.* at 8. But the magistrate judge rejected this argument for lack of evidence that defendants knew of systemic deficiencies posing significant risks to protective custody inmates, and hence to plaintiff, at the facilities in question. *Id.* at 8-10. The magistrate judge noted, correctly, that plaintiff's insistence that

defendants *should have* known of the alleged security problems was insufficient to fill the hole in his case on the subjective intent prong. *See Farmer*, 511 U.S. at 838 (explaining that Eighth Amendment claim cannot be based on "an official's failure to alleviate a significant risk that he should have perceived but did not").

Of course, subjective intent may be established by "inference from circumstantial evidence," *id.* at 842, and, therefore,

> if an Eighth Amendment plaintiff presents evidence showing that a substantial risk of inmate attacks was longstanding, pervasive, well-documented, or expressly noted by prison officials in the past, and the circumstances suggest that the defendant-official being sued had been exposed to information concerning the risk and thus 'must have known' about it, then such evidence could be sufficient to permit a trier of fact to find that the defendant-official had actual knowledge of the risk.

*Id.* at 843 (quotation omitted). Thus, an Eighth Amendment claim could be made out on evidence showing that officials transferred a protective custody inmate to a facility knowing that the inmate could not be protected there.

Plaintiff insists he presented such evidence, citing the Executive Summary of "The Consultant's Report on Prison Operations in New Mexico Correctional Institutions," issued in January 2000 following a review of the state prison system prompted by a riot at the Guadalupe County Correctional Facility. But as the magistrate judge noted, while this 27-page summary reflects a far-reaching review of many security issues in the state prison system, it does not mention any problems regarding the location, housing, or security of protective custody

-18-

inmates. The only reference to protective custody is a brief comment about lax verification standards enabling inmates to manipulate the system and obtain protective custody assignment without adequate factual justification. This evidence does not remotely suggest the existence of circumstances that, conveyed to defendants, would constrain their broad authority over the site assignment of protective custody prisoners in the state system. *See generally McKune v. Lile*, 536 U.S. 24, 39 (2002) (plurality opinion) (noting "that the decision where to house inmates is at the core of prison administrators' expertise").

Plaintiff's second objection is that he was not allowed to conduct adequate discovery before the ruling on summary judgment. *See* Fed. R. Civ. P. 56(f). To resist summary judgment on this basis, a party must specifically identify what facts it seeks to discover and show how those facts would materially aid its case on the dispositive issues. *See Jensen v. Redevelopment Agency*, 998 F.2d 1550, 1554-55 (10 th Cir. 1993). No relief under Rule 56(f) is warranted when "the information sought is either irrelevant to the summary judgment motion or merely cumulative." *Id.* at 1554. We review the district court's determination of these matters only for an abuse of discretion. *Id.* at 1553.

Plaintiff cites three items of discovery that he argues would have enabled him to oppose summary judgment. The first is the consultant's report referred to above. Given the absence of relevant protective custody issues in the report's

-19-

extensive executive summary, however, we agree with the district court that plaintiff has not shown how the report (which, the district court also noted, was not issued until after the events in this case) would have materially advanced his Eighth Amendment claim against Serna and Martinez based on their alleged indifference to risks faced by protective custody inmates.

The second type of discovery plaintiff cites includes the policies and contracts governing TCDF and LCCF, which he claimed would show that these facilities did not have designated protective custody housing. As defendants pointed out in their response to plaintiff's Rule 56(f) motion, however, the fact that a prison is not a protective custody facility does not mean that it cannot safely house protective custody inmates as needed. Indeed, plaintiff's pleadings repeatedly refer to protective custody areas set up at the facilities in question. The relevant question for present purposes is not whether TCDF and LCCF were designated as protective custody facilities but whether the security they provided protective custody inmates was, in practice, inadequate (and, if so, whether Serna and Martinez knew this). Plaintiff has not argued, much less persuasively shown, that the materials he cites would have effectively addressed that question.

Finally, plaintiff sought the names of all of his enemies within the prison system and the facilities where they were located. Such information would not have materially advanced his case against Serna and Martinez, because it would

not have shown that they possessed this information or that they knew the security provided plaintiff as a protective custody inmate at the facilities involved would not be sufficient to protect him from the enemies in question.

The arguments advanced by plaintiff on appeal do not undermine the grant of summary judgment for Serna and Martinez on his Eighth Amendment claim. Substantively, he has not demonstrated a triable issue on the subjective intent element and, procedurally, he has not shown that the district court abused its discretion in ruling on the matter without additional discovery.

### III. Grant of Summary Judgment for CCA Defendants

The district court ultimately granted summary judgment for the CCA defendants on the ground that plaintiff had not exhausted his administrative remedies. Plaintiff objects to that determination, but his appeal in this regard is deficient in two basic respects. We therefore summarily affirm.

First of all, plaintiff attempts to argue the matter by incorporating the briefs he filed in opposition to defendant's motion for summary judgment below. "Like other circuit courts, we do not consider this acceptable argument." *Gaines-Tabb v. ICI Explosives USA, Inc.*, 160 F.3d 613, 623-24 (10 th Cir. 1998). Plaintiff's pro se status does not except him from this established rule. *See Green v. Dorrell*, 969 F.2d 915, 917 (10 th Cir. 1992) (holding that pro se litigants must "follow the same rules of procedure that govern other litigants"). Plaintiff's

perfunctory and unsubstantiated assertion that he could not obtain sufficient paper for briefing is facially dubious. Given that the rules limit a party's principal brief to thirty pages, *see* Fed. R. App. P. 32(a)(7), plaintiff's complaint about lack of paper – made on page thirty of his brief – is facially nothing more than an improper "attempt to evade the space limitations of [the rules] without filing a motion for leave to file an oversized brief [and then actually doing the briefing]." *Fleming v. County of Kane*, 855 F.2d 496, 498 (7 th Cir. 1988).

In any event, we agree with defendants that plaintiff has not preserved the exhaustion issue for appeal. "This court has adopted a firm waiver rule which provides that a litigant's failure to file timely objections to a magistrate's report and recommendation waives appellate review of both the factual and legal determinations." *Key v. Energy Res. Inc. v. Merrill (In re Key Energy Res. Inc.)*, 230 F.3d 1197, 1199-1200 (10 th Cir. 2000) (quotation an alteration omitted). As explained below, plaintiff did not timely object to the magistrate judge's recommendation on this matter and, despite defendants' express invocation of the waiver rule in their appellate briefing, no exception to the rule has been offered by plaintiff, nor does one affirmatively appear from the record.

In July 2002, the CCA defendants moved for summary judgment, asserting that plaintiff had not exhausted his administrative remedies. Briefing proceeded and, on December 2, 2002, the magistrate judge recommended that defendants'

motion be granted. Plaintiff requested and was allowed an extension of time for filing objections until December 20, 2002. But he did not mail his objections until December 31, 2002. [7] The district court initially noted that the objections were untimely, *see* R. Vol. 4 doc. 170, at 1 n.1, but considered them briefly in the course of adopting the magistrate judge's recommendation, *see id.* doc 177.

The eventual submission of untimely objections to a magistrate judge's recommendation does not excuse noncompliance with our rule, which by its terms requires *timely* objection. *See Key Energy Res., Inc.*, 230 F.3d at 1201. Nor does a district court's election to consider untimely objections for purposes of its own review negate the *appellate*-waiver consequences of noncompliance. *See id.* at 1201 n.3 (following *Vega v. Suthers*, 195 F.3d 573, 580 (10th Cir. 1999), to hold that district court review of untimely objection "would not preclude application of the waiver rule or somehow 'revive' [the waived] claims"). And the rule applies to pro se litigants "so long as they were properly informed of the consequences of their failure to object." *Theede v. United States Dep't of Labor*, 172 F.3d 1262,

---

[7] The deadline missed here was not a function of the date of service of the recommendation but, rather, a later date-certain specified by the court (indeed, requested by plaintiff), and, thus, there is no uncertainty about when the time for objections expired. Hence, this court's holding in *United States v. Clingman*, 288 F.3d 1183, 1185-86 (10th Cir. 2002), that the deadline for objections measured from service of the magistrate judge's recommendation should not be enforced when conclusive confirmation of the service date does not appear in the record, does not apply.

1268 (10 th Cir. 1999) (quotation and alteration omitted);     *see, e.g.* , *Treirweiler v. Croxton & Trench Holding Corp.* , 90 F.3d 1523, 1533 & n.5 (10   th Cir. 1996); *Fottler v. United States* , 73 F.3d 1064, 1065 (10   th Cir. 1996).  Here, the magistrate judge's recommendation made it clear that timely objection was a prerequisite for appellate review.     *See* R. Vol. 4 doc. 163, at 1 n.1.

We acknowledge that the waiver rule may be suspended "where the interests of justice so require."     *Fottler* , 73 F.3d at 1065.  But given plaintiff's unexplained failure to meet the extended deadline he himself requested, and the facial inadequacy of his appellate briefing on the merits noted above, we cannot conclude that the interests of justice require that an exception be made in this case. *See generally   Wirsching v. Colorado* , 360 F.3d 1191, 1197-98 (10   th Cir. 2004) (noting, as relevant to "interests of justice" exception in pro se context, the extent of litigant's responsibility for noncompliance and the merit of litigant's claims); *Theede* , 172 F.3d at 1268 (looking to same considerations).

### IV.  Denial of Motion to Amend Complaint

Nearly two years into the case, plaintiff sought to replace his original three-claim complaint of twenty-six pages with an amended ten-claim complaint of fifty-nine pages raising a host of far-reaching allegations and adding numerous new defendants.  After a thorough analysis weighing considerations of unjustified delay and prejudice, the district court denied leave to amend.  Both considerations

are proper bases for disposition of a motion to amend. *See Wessel v. City of Albuquerque*, 299 F.3d 1186, 1196-97 (10 th Cir. 2002) (affirming denial of amendment based on undue delay); *McKnight v. Kimberly Clark Corp.*, 149 F.3d 1125, 1130 (10 th Cir. 1998) (affirming denial of amendment based on prejudice to opposing party). Given the deference we owe the district court's discretionary judgment in this context, "even if we did not [agree with it], the district court's thoroughly reasoned explanation would not constitute an abuse of discretion." *Reeder v. Am. Economy Ins. Co.*, 88 F.3d 892, 896 (10 th Cir. 1996). Moreover, on appeal plaintiff does nothing more than incorporate his district court briefing, which, as we have already seen, is not a permissible means to present appellate argument.

## V. Lack of Jurisdiction in the District Court

As a last resort, plaintiff insists that if we affirm the district court's dismissal of the claims against the CCA defendants for lack of exhaustion, then we must remand and direct the district court to vacate its rulings on all other matters for lack of jurisdiction. There are several problems with this contention. First of all, the exhaustion requirement is not jurisdictional. *Steele v. Federal Bureau of Prisons*, 355 F.3d 1204, 1208 (10 th Cir. 2003), *cert. denied*, 125 S. Ct. 344 (2004). Second, plaintiff never raised this argument in the district court and (being non-jurisdictional) the issue is therefore waived. *Rios v. Ziglar*, 398 F.3d

1201, 1209 (10 th Cir. 2005). Finally, while this court has recognized a "total exhaustion" rule under which a complaint presenting exhausted and unexhausted claims should be dismissed in its entirety, *Ross v. County of Bernalillo*, 365 F.3d 1181, 1188-89 (10 th Cir. 2004), we have not extended the rule – applied in *Ross* to affirm the dismissal of an action when, at the pleading stage, the court noted some claims were not exhausted – to require retrospective vacatur of otherwise proper merits dispositions when, later in the proceedings, the court becomes aware of an exhaustion deficiency affecting a last remaining claim. Given the inadequacies of plaintiff's appellate argument, we do not deem this an appropriate occasion to take such a step.

The judgment of the district court is AFFIRMED.


Entered for the Court


Timothy M. Tymkovich
Circuit Judge